PEOPLE ex rel. TROY PRESS CO. v. COMMON COUNCIL OF CITY OF TROY et al.

(Supreme Court, Appellate Division, Third Department.  June 27, 1906.)

1. NEWSPAPERS—DESIGNATION OF OFFICIAL PAPERS—STATUTES.

Laws 1903, p. 435, c. 182, § 1, subsec. 29, amending Laws 1898. p. 371. c. 182, providing for the government of cities of the second class, provides that the common council * * * shall meet and designate the two daily newspapers published in the city which have the largest circulation and are of opposite political faith, and also the two weekly newspapers published in such city which have the largest circulation and are of opposite political faith, as the official newspapers of the city for two years, and until others are designated.  Laws 1893, p. 1310, c. 575, § 3, subsec. 9 (charter of city of Troy), provided that the common council should designate four newspapers published in the city and having the largest circulation as official newspapers, and that "the oaths of the publishers of said newspapers, and the business records of said newspaper offices for the three months preceding such designation, shall be required by the common council as confirmatory of the actual circulation of the said newspapers before such designation is made."  Second-Class Cities Law, p. 443, § 483, declares that nothing contained in that law shall be con-strued to repeal any statute not inconsistent with the provisions of the act, and the same shall remain in full force and effect when not incon-sistent therewith, to be therewith construed and operated in harmony. Held, that the provisions of the charter were not inconsistent with the provision of the second class cities law, and remained in effect by virtue of said section 483 of the latter statute, and hence the designation of newspapers, made without requiring the oaths of the publishers or the business records of the papers, was invalid.

2. CERTIORARI—GROUNDS—OFFICIAL NEWSPAPERS—ILLEGAL DESIGNATION.

Under Code Civ. Proc. § 2140, providing that the questions involving the merits to be determined by the court on the hearing on return of a writ of certiorari are the following only, * * * whether in making the determination any rule of law affecting the rights of the parties there-to has been violated to the prejudice of the relator, certiorari lies to review the determination of the common council of the city of Troy in designat-ing, without compliance with the statutory provisions, official newspapers of the city.

3. NEWSPAPERS—DESIGNATION OF OFFICIAL PAPERS—PAPERS OF OPPOSITE PO-
LITICAL FAITH.

Under Laws 1903, p. 435, c. 182, § 1, subsec. 29, amending Laws 1898,
p. 371, c. 182 (Second-Class Cities Law) providing for the designation
by the common council of two daily newspapers having the largest cir-
culation and of opposite political faith as official newspapers of the city,
a newspaper which supports no party, and advocates the principles or
candidates of no party, but which is the personal organ of its publishers
and proprietors, at times supporting the candidates and principles of
either the Republican or Democratic parties, as its officials may determine,
is not a paper of opposite political faith to any regular party paper.

4. CERTIORARI—RETURN—SUFFICIENCY.

Under such sections, where a petition for a writ of certiorari to review
the determination of the common council in designating official newspapers
made a positive affirmation as to the independent character of one of the
papers, a return not replying thereto at all, except by a general allegation
upon information and belief that the two papers whose designation was
under review were the two daily newspapers published in the city which
had the largest circulation, and were of opposite political faith, was in-
sufficient.

Certiorari by the people, on the relation of the Troy Press Company,
against the common council of the city of Troy and others.   Deter-
mination of the council annulled, and council required to meet and desig-
nate official newspapers, according to law.

This is a certiorari to review the determination of the common council of
the city of Troy designating official newspapers for that city.   The city is the
only city of the second class having less than 90,000 inhabitants, and as to
such city section 1, subsec. 29, c. 182, p. 435, of the Laws of 1903, which amends
an act for the government of cities of the second class (chapter 182, p. 371, Laws
of 1898), provides that the common council, within 30 days after its first
meeting, shall meet and designate the two daily newspapers published in said
city which have the largest circulation and are of opposite political faith,
and also the two weekly newspapers published in said city which have the
largest circulation and are of opposite political faith, as the official newspapers
of the city for two years, and until others are designated.   The charter of
the city (chapter 575, p. 1310, Laws of 1893, § 3, subsec. 9), provided that the
common council should designate four newspapers published in the city and
having the largest circulation as official newspapers, and that "the oaths of
the publishers of said newspapers and the business records of said newspaper
offices for the three months preceding such designation shall be required by
the common council as confirmatory of the actual circulation of the said
newspapers before such designation is made by the common council."   The
relator had been designated as one of the official newspapers in 1904, and has
the largest circulation of any Democratic newspaper published in the city.
Without requiring the oaths of the publishers or the business records of the
newspapers, the common council, in January, 1906, designated the Troy Daily
Times and the Troy Evening Standard as the two official daily newspapers.
The Times is a Republican newspaper.   The Evening Standard is not a
Democratic nor a Republican paper, nor of the faith of any political party, but
is independent in politics, and supports such candidates and political principles
and policies as its proprietors and publishers may from time to time deem
best, without reference to their political character or affiliation.   Section 483
(page 443) of the second-class cities law declares that "nothing contained in
that law shall be construed to repeal any statute  *  *  *  not consistent with
the provisions of the act, and the same shall remain in full force and effect when
not inconsistent with the provisions of this act, to be construed and operated
in harmony with the provisions of this act."   The relator contends that the
above provision continues in force the provisions of the charter of the city
requiring the common council, before the designation of the official news-
papers, to obtain the affidavits of the publishers or proprietors of the paper,

and the business records of the papers as to circulation, and that the alleged designation is in violation of that provision of the charter, and that the Evening Standard is not eligible for designation, and that the relator is aggrieved by the designation under review.

Argued before SMITH, P. J., and CHESTER, KELLOGG, and COCHRANE, JJ.

William J. Roche, for relator.

John T. Norton and George B. Wellington, corp. counsel, for respondents.

JOHN M. KELLOGG, J.   The provision of the charter designating the manner in which the common council shall determine the circulation of the respective newspapers is not inconsistent with the provision of the second-class cities law, and remains in effect by virtue of section 483 of the latter statute.   The authority of the common council to designate official newspapers was not pursued in the mode required by law, and in making its determination it violated the rights of the relator to its prejudice, and therefore that determination is reviewable by certiorari.   Section 2140, Code Civ. Proc.   The relator is interested in having such review, for it continues the official newspaper until its successor is properly designated.   This statute relating to the designation of official newspapers was evidently intended to bring the public matters before the newspaper readers of the two principal parties.   It is clear that a Republican newspaper and a Democratic newspaper and a newspaper of any other party, may be said to be newspapers of opposite political faith; but a newspaper which supports no party, and advocates the principles or candidates of no party, but is the personal organ of its publishers and proprietors, at times supporting the candidates and principles of either of the other parties, as its officials may determine, cannot be said to be a paper of opposite political faith to any regular party paper.   The Evening Standard is not of a political faith opposite to any party newspaper.   It is independent in its politics, and may during all the term covered by the present designation support Republican policies and candidates, or the policies and candidates of any other party.   If its designation stands, both official newspapers may, during all the term of the designation, support the same political policies and candidates, which is not the intention of the statute.   A religious newspaper, an agricultural newspaper, or any trade journal may from time to time advocate certain political principles or candidates; but by so doing it does not become, within the meaning of this statute, a newspaper of opposite political faith to any party newspaper.   The Evening Standard voices the principles of no political party, and is not qualified to act as an official newspaper.   It would seem that, while its circulation is large, its subscribers must be made up of Democrats, Republicans, and persons of other parties, as it has no party of its own.   In the state and national campaign of 1904 it did not support the Democratic principles or candidates; nor in the election of November, 1905.   The mere fact that for these years it did not support the regular Democratic candidates might not disqualify it for being designated as a Democratic paper if its general faith was Democratic, and it generally advocated

the principles and candidates of that party. But that question is not here for determination and is not determined. The record shows that it is neither of the Democratic, the Republican, or any other political faith, and clearly, upon the facts shown here, the two newspapers of the city having the largest circulation and of opposite political faith are the Republican and the Democratic papers, respectively, having the largest circulation. The petition makes the positive affirmation as to the independent character of the Standard. The return does not reply to those allegations at all, except by a general allegation upon information and belief that the Troy Daily Times and the Troy Evening Standard, the two papers whose designation is under review, were the two daily newspapers published in the city which have the largest circulation and are of opposite political faith. This, in view of the positive allegation in the petition as to the nonpartisan character of the Standard, must be viewed simply as a conclusion, and probably rests upon the view of the respondents that an independent paper is of opposite political faith to a Democratic or Republican paper. I do not therefore consider that this part of the return meets or controverts the allegation in the petition that the Standard is not a party, but is an independent, paper, and that fact therefore stands admitted.

For the reason, therefore, that the common council in making the designation did not act in the manner and upon the evidence required by the charter of the city, and also for the reason that the Evening Standard, one of the papers designated, is not eligible to such designation, the designation of newspapers made in January, 1906, is annulled, and the common council is required, within 30 days after the service of the order herein, to meet and designate official newspapers according to law, with $50 costs and disbursements to be paid by the respondent. All concur.

PER CURIAM. Determination of the common council annulled and the common council is required, within thirty days after the service of the order herein, to meet and designate official newspapers according to law, with $50 costs and disbursements to be paid by the respondent, upon the opinion in People ex rel. Troy Press Co. v. Common Council (decided herewith) 99 N. Y. Supp. 1045.